IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DONALD J. DAVIS**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-1130-L** |
| | § | |
| **THE KROGER CO.** and **KROGER TEXAS,** | § | |
| **L.P.**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment, filed October 24, 2008.

After careful review of the motion, response, reply, briefs, appendices, record, and applicable law,

the court **grants** Defendants' Motion for Summary Judgment.

## I.    Factual and Procedural Background

Plaintiff Donald J. Davis ("Davis" or "Plaintiff") originally filed this lawsuit in the 44th

Judicial District of Dallas County, Texas, on May 22, 2007, against Defendants The Kroger Co. and

Kroger Texas L.P. (collectively, "Kroger" or "Defendants").[1] Plaintiff's Original Petition contended

that Kroger discriminated and retaliated against Davis because of his race in violation of the Civil

Rights Act of 1964.  Davis also brought a claim for breach of the Collective Bargaining Agreement

("CBA") governing the terms of his employment pursuant to the National Labor Relations Act, 29

U.S.C. § 185.  He further brought state law claims of fraud, negligence, defamation, and intentional

infliction of emotional distress and sought damages, attorney's fees, and costs.

---

[1]There were several more defendants in the original lawsuit who have since been terminated from
this action.

**Memorandum Opinion and Order – Page 1**

Kroger removed this action to federal court on June 25, 2007, based on diversity and federal question jurisdiction. Davis filed his First Amended Complaint on July 19, 2007; his complaint omitted the Title VII claims, the intentional infliction of emotional distress claim, and the breach of CBA claim. The complaint added a claim of racial discrimination pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, and a claim pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., prohibiting discrimination, retaliation, or disciplinary action against a participant or beneficiary who exercises a right under the provisions of an employee benefit plan. Davis sought monetary damages for past and future lost earnings, damages for past and future lost benefits, damages for mental anguish and medical expenses, equitable relief, exemplary damages, a declaratory judgment, and reasonable attorney's fees and costs. On March 31, 2008, the court issued a memorandum opinion and order directing Davis to replead his fraud claims with greater specificity. Davis complied on April 15, 2008, when he filed his Second Amended Complaint.

The record establishes that Davis, an African American, was employed by Kroger from 1988 until his termination in August 2004. He started as a grocery sacker and worked his way up to the position of grocery manager. Over this time period, Davis worked at Kroger stores in Waxahachie, De Soto, and Duncanville. In May 2004, while working at the Duncanville store, he requested transfer back to the De Soto store, ostensibly because of alleged racially insensitive comments made by the Duncanville store's manager, Jeff Parman ("Parman"). The transfer was granted.

Kroger's employment records reflect that Davis was automatically terminated on August 21, 2004, because of an unexcused leave of absence from July 1 through October 10 of that year, resulting in more than six weeks of inactivity in the system. During a portion of that time period,

Davis worked for a different employer, Owens Corning.  The CBA defines working for another employer while on leave as a "voluntary quit."  *See* Def.'s App. 0043 at § 12.06 ("Any employee accepting employment elsewhere while on leave of absence shall be considered a voluntary quit . . . .").  This termination resulted in Davis's loss of seniority, and the union grievance filed on his behalf was withdrawn as untimely.

Kroger's employment records further reflect that Davis was "rehired" on December 26, 2004, after he had returned to work.  In 2006, he was assigned to Kroger's Grand Prairie store.  That May, of his five scheduled shifts, Davis worked two: on Monday, May 14th and Tuesday, May 15th. Following his Tuesday shift, Davis told the store's assistant manager, Shawn Morris, that he needed the rest of the week off because of strep throat.  On Saturday, May 20th, Davis called the store and was told that he was scheduled to work that night.  Davis complained, arguing that he was not scheduled to work that night, and traveled to the store in person to verify his schedule.  The schedule indicated that he indeed had shifts to work that night and the following day.  He accused the store manager David Longoria ("Longoria") of changing the schedule and argued that "he knew he was off that night."  Longoria told Davis that if he did not work his scheduled shift, he would be fired. Davis elected not to work his Saturday shift and went home.

Davis returned to the store the next day, on Sunday, May 21st, expecting to start his other scheduled shift.  Upon his arrival, he was notified by the store's comanager, Mack Robinson ("Robinson"), that he had been fired; he was asked to leave the premises.  Davis argued and demanded to talk to the district manager, expressing extreme discontent with the way he was being treated.  Robinson, concerned about a potential disruption in front of customers, called the police. When the police officers arrived, they asked Davis to leave the premises.  He complied.

**Memorandum Opinion and Order – Page 3**

On October 24, 2008, Kroger filed its motion for summary judgment with respect to all of Plaintiff's claims. Defendants contend that Davis's claims are either preempted or that no genuine issue of material fact exists that would entitle him to the relief he seeks.

## II.  Legal Standard – Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v.*

*Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   <u>Analysis</u>

Plaintiff's claims wholly revolve around his allegation that Kroger's management, on the basis of racial discrimination, engineered a plot to "secretly" terminate him from employment and deprive him of his seniority benefits. The plot allegedly culminated in Davis's transfer to the Grand Prairie store and subsequent firing after subtle manipulation of the work schedule. Kroger makes several arguments with respect to each of Plaintiff's claims, contending that all of them are either preempted by section 301 of Labor Management Relations Act ("LMRA") or do not give rise to a

genuine issue of material fact. Further, Kroger contends that Davis can provide no evidence to support any of his claims. The court will address Davis's claims and Kroger's arguments in turn.

A.    **Federal Preemption**

Kroger first argues that all of Davis's state law claims arising out of his 2004 termination (including defamation, fraud, negligence, and his request for declaratory judgment) are preempted by section 301 of the LMRA as a matter of law. Section 301 preempts state law claims when the resolution of such claims "substantially depends on the meaning of a collective bargaining agreement." *Branson v. Greyhound Lines, Inc.*, 126 F.3d 747, 753 (5th Cir. 1997) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)). Claims that are only tangentially related to such an agreement are not preempted. *Id.* The ultimate test for preemption is whether an application of state law requires "interpretation" of the CBA to resolve the claim. *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988)). Such interpretation may be necessary because of a defense that the employer has raised. *See id.*

Kroger contends that Davis's state law claims relating to his 2004 termination require interpretation of the CBA for resolution because Kroger relies heavily on certain provisions of the CBA in defense. Davis contends generally that his claims cannot be preempted because they are not premised on the CBA. The court views this distinction as irrelevant and finds the removal jurisdiction cases cited by Plaintiff to have no bearing on this position. The claims here do not involve removal to federal court where the "federal question" must be part of Plaintiff's complaint and not solely a theory of the defense. Here, the controlling test is whether the CBA must be interpreted to resolve Plaintiff's claim. If a defendant raises a provision of the CBA as a legitimate

defense to the harm alleged, interpretation of the CBA necessarily comes into play.  With respect to Plaintiff's claims, the court finds it appropriate to consider each one separately to glean its relation to the 2004 termination and whether it implicates interpretation of the CBA.

### 1.    Defamation Claim Arising from the 2004 Termination

To bring a claim for defamation under Texas law, the plaintiff must establish the following elements: (1) a false statement about the plaintiff was made; (2) the statement was published to a third party without legal excuse; and (3) the plaintiff's reputation was damaged as a result.  *Fiber Sys. Int'l., Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)).  In a claim for defamation *per se*, "[t]he words are so obviously hurtful that they require no proof that they caused injury in order for them to be actionable."  *Id.* (internal quotations omitted).  A claim for defamation *per quod*, however, requires proof of actual damages.  *Id.* n.8 (citing *Moore*, 166 S.W.3d at 384).  Davis's defamation claim is for defamation *per quod*; accordingly, proof of actual damages is required.[2]

Davis contends that Kroger intentionally falsified his employment records to show that he only worked two years for Defendants instead of eighteen.  He alleges that Kroger then communicated these false employment records to Kroger employees and employment verification

---

[2]"For a defamatory oral statement to constitute slander *per se*, it must fall within one of four categories: (1) imputation of a crime, (2) imputation of a loathsome disease, (3) injury to a person's office, business, profession, or calling, and (4) imputation of sexual misconduct."  *Fiber Systems*, 470 F.3d at 1161 (quoting *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied)).  In this case, Plaintiff's defamation claim does not allege, and his evidence does not establish, any injury that could rightfully fall within one of these four categories.  To the extent that Plaintiff contends he has suffered injury to his business, profession, or calling, the court is unpersuaded.  There is no record of Plaintiff being turned down for employment as a result of his termination from Kroger or because his Kroger employment record reflects only two years of service.  On the contrary, the record establishes that Plaintiff has a full-time job at Owens Corning where he has worked and continues to work.  The court therefore determines that his claim is for defamation *per quod,* and he must show actual damages to prevail.

companies.  He further alleges that such communication has severely injured his reputation and has

caused him to suffer extreme mental anguish, public humiliation, and embarrassment; he also

contends that this caused a loss of tangible job benefits and compensation—his seniority status.

With respect to his alleged injuries, the court finds all but the loss of his seniority status to

be unsupportable by the evidentiary record.  Plaintiff has simply not shown any actual damages

incurred as a result of the alleged defamation aside from loss of his seniority with Kroger.[3]  As to

the loss of Plaintiff's seniority status, Kroger turns to provisions of the CBA for justification and

legal excuse.  The CBA is clear on the procedure for properly obtaining a leave of absence, as well

as the consequences for failure to do so:

> Any employee desiring a leave of absence from the job shall secure
> written permission from the Employer with a copy to the Union, the
> length of absence to be agreed by the Employer and the employee.
> The length of leave shall be commensurate with the need.  *Failure to
> comply with this provision shall result in the complete loss of
> seniority rights of the employee involved.*

Def.'s App. 0042, § 12.02 (emphasis added).  The record establishes that Davis took unexcused

leaves of absence from July 1, 2004 to October 10, 2004.  *Id.* at 0142.  The court accordingly finds

that interpretation of the CBA is necessary to determine whether Kroger had the authority and proper

legal justification to take away Plaintiff's seniority status, rebutting the "falsity" and "without legal

excuse" elements of the claim.  Such interpretation implicates preemption under section 301 of the

LMRA.  Accordingly, Plaintiff's defamation claim as it relates to his 2004 termination is preempted.

---

[3]Although Davis contends that he was unable to acquire a bank loan in November 2004 and was accused of fraud when the bank attempted to verify his employment history with Kroger, this event falls outside of the one-year statute of limitations for a defamation claim.  Recovery for this injury under a defamation theory is barred pursuant to the court's holding in its March 31, 2008 memorandum opinion and order.

### 2.      Fraud Claims Arising from the 2004 Termination

Davis brings claims of fraud and fraud by nondisclosure; he contends that these claims are not related to the CBA.  A fraud claim under Texas law is actionable when: (1) a material misrepresentation was made; (2) the representation was false; (3) the falsity of the representation was known to be false when made or was asserted without knowledge of its truth; (4) the representation was intended to be acted upon; (5) the representation was relied upon; and (6) injury occurred as a result.  *See Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).  "Courts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose."  *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567-68 (5th Cir. 2005) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997)).

Davis asserts two separate fact patterns arising out of his 2004 termination that form the basis of his fraud claims.  First, he contends that Duncanville store manager Parman represented to him that he was being transferred to the De Soto store, but instead secretly terminated Davis in the system and did not submit the proper transfer paperwork.  Davis's fraud by nondisclosure claim arises from the same conduct; he argues that Parman secretly terminated him and that Kroger was deliberately silent despite having a duty to notify Davis of his termination.  Kroger argues that, to the extent Davis is complaining that the "misrepresentation" was Kroger's reporting of a new hire date in 2004, his fraud claims are preempted.  To this extent, the court agrees because such a claim

would implicate legal excuse under the CBA; however, it is clear that Davis's fraud claims do not characterize the "misrepresentation" as his new hire date in 2004. Davis's contention is that he was fraudulently led to believe he was being transferred to another Kroger store when, in actuality, he was being terminated without notice. The CBA says nothing about transferring employees or terminating them without notice. Thus, after review, the court determines that resolution of these claims will not require interpretation of the CBA. Accordingly, the court finds that these claims are not preempted.

The second fact pattern Davis alleges to support his fraud claim is the failure of Kroger to correct the inaccuracies of his employment record, despite being expressly told by Kroger agents, store manager Eddie Villarreal ("Villarreal") and district manager Bill Sturm ("Sturm"), that such "inaccuracies" would be corrected. Because the CBA does not contemplate procedures for correcting inaccurate employment records, the court determines that this fraud claim is not preempted. Accordingly, the court finds that Plaintiff's claims for fraud and fraud by nondisclosure are not preempted under section 301 of the LMRA.

### 3.    Negligence Claim Arising from the 2004 Termination

Davis's negligence claim asserts that Kroger was negligent and grossly negligent in maintaining Plaintiff's employment record. In Texas, the elements required to establish a negligence claim are: (1) a legal duty to use due care; (2) a breach of that duty; (3) proximate causation of the resulting injury; and (4) damages. *Kroger v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *see Morin v. Moore*, 309 F.3d 316, 326 (5th Cir. 2002). Although Kroger argues that Davis's negligence claim is barred by the applicable two-year statute of limitations, Davis has styled his claim as a continuing tort; he argues that every day his employment record goes uncorrected, a new cause of action is

created and the limitations period does not toll until after the tortious conduct ceases. For the sake of this preemption analysis, the court will entertain Plaintiff's legal theory.

With respect to the individual elements of negligence, Kroger argues that it has no legal duty to properly maintain Plaintiff's employment records. Further, Kroger argues that the employment records have not been negligently maintained but rather are accurate in light of Davis's unexcused leave of absence that prompted his termination. Kroger also presents evidence of Davis working for another employer while on his leave of absence. In support of its decision to terminate Davis (and in support of having his employment record reflect such a termination), Kroger relies on several provisions of the CBA. *See, e.g.,* Def.'s App. 0043, § 12.06 ("Any employee accepting employment elsewhere while on leave of absence shall be considered a voluntary quit . . . ."); *Id.* at 0042, § 12.02 ("Failure to comply with [the personal leave of absence] provision shall result in complete loss of seniority rights of the employee involved."); *Id.* at 0048, § 18.03 ("Seniority shall be considered broken if an employee is duly discharged by the employer . . . ."); *Id.* at 0034, Art. 3 ("[Management Rights include] the management of the business and direction of the working forces, including the right to . . . discharge for proper cause . . . .").

After reviewing these CBA provisions in light of Kroger's arguments in rebuttal of Plaintiff's negligence claim, the court determines that interpreting the CBA is necessary to resolve the element of breach. Assuming for the sake of argument that a legal duty exists for an employer to maintain accurate employment records, a breach of that duty can only occur when the employer has not exercised due care. Here, the court finds that if Kroger acted in accordance with the provisions of the CBA, Kroger used due care. Analysis of whether Kroger's actions concerning Davis's 2004 termination and the alteration of his employment record requires the court to interpret the CBA for

the purpose of determining whether Kroger's actions comported with the agreement.  Because the court finds that it must interpret the CBA to resolve Plaintiff's negligence claim, such claim is preempted under section 301 of the LMRA.

### 4.      Request for Declaratory Judgment Arising from the 2004 Termination

Plaintiff seeks a declaratory judgment and requests the court to declare that Davis was employed by Kroger for eighteen years and that there was no good cause for his termination.  To determine whether Kroger had good cause for termination, the court must interpret the CBA.  Kroger relies on the CBA's provisions to justify the termination, and the court finds that the CBA specifically contemplates particular circumstances where a termination is justified.  Accordingly, to the extent that Davis's request for declaratory judgment asks the court to find that no good cause exists for termination, the court finds that section 301 of the LMRA preempts.

With respect to Davis's request that the court declare he was employed by Kroger for eighteen years, the court cannot identify a provision of the CBA that would preempt such a finding. Even if good cause was shown for the 2004 termination, an employment history of sixteen years followed by another two years totals eighteen.  Preemption does not apply to this request because interpretation of the CBA is not required.

### B.      Section 1981 Claims

Davis brings claims of racial discrimination and retaliation pursuant to 42 U.S.C. § 1981. The court will analyze both theories separately.

### 1.      Racial Discrimination Under Section 1981

To prove a claim of intentional discrimination under section 1981, a plaintiff can employ either direct or circumstantial evidence.  *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 201 (5th

Cir. 2008).  Absent direct evidence of discriminatory intent, as here, circumstantial evidence is examined using the burden-shifting framework set forth in the seminal case of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  *Id.*  Under the *McDonnell*[4] framework, the first step is for a plaintiff to create a "presumption of intentional discrimination by establishing a *prima facie* case."  *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).  Once the *prima facie* case is established, the burden shifts to the employer to articulate one or more legitimate, nondiscriminatory reasons for the adverse employment action.  *See id.* (citing *McDonnell*, 411 U.S. at 802).  If the employer meets that burden, the *prima facie* case dissolves, and the employee must demonstrate either that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."  *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

To present his *prima facie* case, Davis must show that: (1) he belongs to a racial minority; (2) he is qualified for the position; (3) he suffered adverse employment action; and (4) he was either replaced by someone outside the protected class or others outside the protected class were treated more favorably.  *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).  Davis contends that both his 2004 and 2006 terminations were precipitated by racial discrimination.  With respect to his 2004 termination, Davis alleges that Duncanville store manager Parman "secretly" authorized his termination (because of his race) instead of effecting a transfer to the De Soto store, as Davis had originally requested.  To support a showing of discriminatory intent, Davis testified at his deposition that Parman made racially insensitive remarks to him at work.  Specifically, Davis indicated that

---

[4]Although *McDonnell* involved a Title VII claim, the summary judgment analysis is the same for claims of race discrimination under both Title VII and section 1981.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (citing *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001)).

**Memorandum Opinion and Order – Page 13**

Parman said Davis "looked like a drug dealer" and "could only afford his nice clothes and car if [he] were a drug dealer." Pl.'s App. 14-15, 34:2-35:5. Kroger does not concede that Parman made such comments, but it argues that even if Parman did say those things, he meant them only jokingly. The court determines that, without more, there is no racial overtone to such statements. Davis does not explain why these comments are racially insensitive, nor has he shown that they were prompted because of his skin color. The record establishes that Kroger has a strong company policy against racial discrimination and that Davis was aware of this company policy at the time Parman made the alleged racially insensitive comments. Def.'s App. 0055, § 20.02; *Id.* at 0081, p.18. Further, Davis concedes that he never complained of racial discrimination while employed at Kroger, even though he challenged his terminations pursuant to the grievance procedure under the CBA.

In light of the evidentiary record, the court cannot agree that a *prima facie* case of racial discrimination has been established. Although he is African American and was terminated from his position, Davis has not demonstrated that he was subsequently replaced by a non-African American or that non-African Americans were treated more favorably. Furthermore, his evidence in attempting to establish discriminatory intent on the part of Parman is sorely lacking. The affidavit and deposition testimony of Kroger's assistant human resources manager, Henry Taylor ("Taylor"), state that only human resources department personnel have access to the computer system that contains employee data, not store managers such as Parman. Logs of significant employment status changes are kept through the issuance of Turn Around documents submitted from the applicable store. Henry's declaration and testimony are corroborated through a Turn Around document on file, received by Kroger's human resources department from the Duncanville store evidencing that Davis was, in fact, transferred back to De Soto per his request. *Id.* at 0161. There is no Turn Around

document on file evidencing that Parman authorized Davis's 2004 termination, and the court is unpersuaded that Parman had access to the computer system that would allow termination without first submitting a Turn Around document.  The court therefore determines that Davis has not established a *prima facie* case of discrimination under section 1981 with respect to his 2004 termination because he has not shown that his termination was as a result of his race or national origin.  *See Teffera v. N. Texas Tollway Auth.*, 121 F. App'x 18, 20 (5th Cir. 2004).  Plaintiff has therefore not carried his burden in setting forth a *prima facie* case.

With respect to his 2006 termination, Davis alleges that store manager Longoria, a Hispanic American, furtively altered Davis's work schedule and then fired him for not working a shift as a pretext for racial discrimination.  To support a showing of discriminatory intent, Davis testified at his deposition that Longoria made racially motivated comments to him such as, "I know your kind." Pl.'s App. 20, 97:1-10.  Longoria allegedly made this comment after Davis indicated that he would not work his scheduled shift on May 20, 2006.  Kroger contends that Longoria's comment was made out of exasperation with Davis about his refusal to work that night; Kroger argues that the comment could have equally referred to Davis's kind as "lazy" or "insubordinate," not his race.  The court also notes that the statement could have easily been a reference to persons who tend to "buck the system."  Whatever the case, Longoria put Davis on notice that if he did not work his scheduled May 20, 2006 shift, he would be fired.  Davis elected not to work the shift because he did not believe he had been scheduled to work that night, and Longoria fired him.  The statement, in light of the other evidence, is simply too slender of a read to support any discriminatory intent based on race.

It is undisputed that Davis drove to the Grand Prairie store on May 20, 2006, to verify his work schedule in person and saw that he was indeed scheduled to work a shift that night.  Davis's

**Memorandum Opinion and Order – Page 15**

contention is that he was originally not scheduled to work that night and that Longoria changed his schedule without affording him proper notice. The record makes clear, however, that Davis was aware that, as a manager, he could be called on a moment's notice to work an unscheduled shift, even if he had been previously removed from the schedule as requested. Def.'s App. 0018, 78:6-17. Further, on the night in question, Davis acknowledged that he *could* have worked that night, but he did not want to work. *Id.* at 0017-18, 76:12-77:22. Assistant human resources manager Taylor testified at his deposition that refusal to work a scheduled shift (without a legitimate excuse) could qualify as grounds for immediate termination. *Id.* at 0110, 397:13-19. Davis argues that termination was improper because he was entitled to progressive disciplinary action pursuant to Kroger's company policy. The deposition of Kroger district manager Sturm reveals, however, that the progressive discipline policy does not apply to employees in management positions. *Id.* at 0172, 8:15-19.

Even assuming that Plaintiff has established a *prima facie* case of racial discrimination with respect to his 2006 termination, Kroger has provided a legitimate, nondiscriminatory reason for the termination. The burden therefore shifts back to Davis to establish that the stated reason is pretextual and that he was the victim of intentional race discrimination. As discussed, the court is unpersuaded by Davis's evidence that the termination amounted to racial discrimination under the guise of legitimacy. Nothing in the record suggests that Davis would have been terminated if he had worked the scheduled shift. Nothing in the record indicates that Davis was physically unable to work that night or that he had prior obligations preventing him from doing so.[5] The court determines

---

[5]The court finds unpersuasive Davis's contention that he could not work because he had a conflicting "family outing" which involved staying at home to watch a movie with his wife and three children, aged ten, five, and less than a year old, at 10:00 p.m. at night, the time his shift was scheduled to start.

**Memorandum Opinion and Order – Page 16**

that Davis has failed to carry his burden demonstrating that Kroger's reason for his 2006 termination was a pretext for racial discrimination. Further, the court can find no racially discriminatory intent connecting Longoria's comment, "I know your kind," and Davis's termination for failure to work a scheduled shift.[6] Longoria's statement in a vacuum in no way suggests racial discrimination and is too attenuated to overcome summary judgment. The statement could have been a reference to Longoria's negative perception of Davis's work habits, or Longoria's belief that Davis was attempting to bypass company rules or policy. Accordingly, there is no genuine issue of material fact, and Kroger is entitled to judgment as a matter of law on Davis's racial discrimination claims.

## 2. Retaliation Under Section 1981

Davis finally contends that he was retaliated against when he complained to Kroger's human resources department about his 2004 termination and was subsequently transferred to the Grand Prairie location, requiring him to travel a farther distance to work. Outside of his conclusory allegation, Davis does not address his retaliation claim in the response brief, nor does he rebut any of Kroger's evidence detailing the reason for his transfer to Grand Prairie. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) he experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted). Plaintiff's ultimate burden is to show that he would not have suffered the adverse employment action "but for" his engagement in the identified protected activity. *See Septimus v. Univ. of Houston*, 399 F.3d 601,

---

[6]Davis also alleges that Kroger's "failure to correct" his employment record evidences discriminatory intent. In light of the court's analysis of the evidence and the nondiscriminatory reasons articulated by Kroger, the court finds Davis's contention unpersuasive.

**Memorandum Opinion and Order – Page 17**

608 n.15 (5th Cir. 2005) (citations omitted).  An employee has engaged in protected activity if he

has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a

charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or

hearing. *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir.

1996).  Section 1981 protects against retaliation for opposition to race discrimination in the

workplace.  *Foley v. University of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003).

Here, Plaintiff contends that his protected activity was complaining about his 2004

termination under the CBA's grievance procedure.  Notably, he did not complain of racial

discrimination as part of his grievance.  He further contends that the adverse employment action he

suffered was the subsequent store transfer.  The court, however, sees no causal link between the two

resulting in satisfaction of the third element, even if it assumes that the conduct Davis identifies as

the "protected activity" was, in fact, protected.[7]  Kroger's evidence makes clear that Davis's transfer

to Grand Prairie was consistent with Kroger practice and was dictated by another store's closing.

Davis admitted at deposition that another manager was brought into the De Soto store because

another store closed.  Def.'s App. 0020, 101:20-102:3.  This manager was in a senior position to

Davis and, accordingly, was given the option to stay in De Soto first while Davis, being the lesser

experienced manager of the two, was obligated to transfer.  *Id.* at 102:25-103:2; 103:16-18).  Such

managerial movement, Davis acknowledged, was a common practice with Kroger.  *Id.* at 0006,

---

[7]The court is unconvinced that Davis's grievance governed by the CBA qualifies as "protected activity" under section 1981.  Davis has provided the court with no authority to support his position, and the court's research has revealed none.  Merely filing a grievance challenging his 2004 termination pursuant to the CBA does not oppose an unlawful employment practice under section 1981 (racial discrimination),  nor does it charge a violation of Title VII.  Davis admits that he never complained of racial discrimination while employed by Kroger.  The court therefore determines that Davis did not participate in a "protected activity" under section 1981 and that such serves as an independent ground to defeat his retaliation claim.

31:10-12.  There is no indication in the record that, but for Davis's engagement in the alleged "protected activity" that he would not have been transferred. Because Davis has not rebutted Kroger's legitimate, nondiscriminatory explanation of his transfer, the court finds that Plaintiff has not carried his burden.

In light of its analysis, the court determines that no genuine issue of material fact exists with respect to Davis's racial discrimination claims brought pursuant to 42 U.S.C. § 1981. Accordingly, Kroger is entitled to judgment as a matter of law on Davis's retaliation claim.

### C.     Fraud and Fraud by Nondisclosure Claims

Davis brings claims for fraud and fraud by nondisclosure allegedly arising out of his 2004 and 2006 terminations.  Kroger argues that all of the fraud claims are barred by the employment at will doctrine; however, Davis has cited authority sufficient to cast doubt on whether the employment at will doctrine acts as a bar to fraud claims that do not arise out of the employer's business decision to terminate the employee.  Accordingly, the court will consider the individual elements required to bring a fraud claim and whether Davis has satisfied those elements.

A fraud claim under Texas law is actionable when: (1) a material misrepresentation was made; (2) the representation was false; (3) the falsity of the representation was known to be false when made or was asserted without knowledge of its truth; (4) the representation was intended to be acted upon; (5) the representation was relied upon; and (6) injury occurred as a result. *See Arete Partners*, 594 F.3d at 394.  Davis first asserts that Duncanville store manager Parman fraudulently represented to him that he was being transferred back to the De Soto store, when instead Parman "secretly" terminated Davis in Kroger's system.  The court finds this allegation legally insufficient to meet the elements of a fraud claim.  The evidence unquestioningly establishes that Parman's

**Memorandum Opinion and Order – Page 19**

representation that Davis would transfer stores does not qualify as a "misrepresentation" at all, let alone a material one.  Davis *was* transferred to the De Soto store, and he worked there for several weeks before his 2004 termination.  *See* Def.'s App. 0142; *id.* at 0161.  A Kroger Turn Around document establishes that the transfer took place, and Davis's own employee earnings report demonstrates the same.  *See id.*  Moreover, Davis testified in his deposition that he was transferred to De Soto and worked for at least eight weeks before he went on leave.  *Id.* at 0027, 147:4-148:1. Accordingly, the undisputed factual record does not comport with Davis's allegations of fraud with respect to his 2004 transfer and termination.  Although the deposition testimony of former Kroger store manager Villarreal conjectures that Parman may have terminated Davis instead of transferring him, such testimony is speculative at best, does not constitute competent summary judgment evidence, and is inconsistent with the evidentiary record.

Davis also challenges his 2004 transfer and termination through a claim of fraud by nondisclosure.  In Texas, establishing a claim for fraud by nondisclosure requires proof of all of the elements of fraud, including fraudulent intent, with the exception that the misrepresentation element can be proved by the nondisclosure of a material fact in light of a duty to disclose.  *See United Teacher*, 414 F.3d at 567-68.  Consistent with the court's prior analysis, the evidentiary record is deficient with respect to a showing of fraudulent intent.  As noted, Davis was indeed transferred to the De Soto store and worked there for several weeks before his termination.  His assertion that it was Parman who ordered the termination is nothing more than conclusory speculation based on the deposition testimony of former Kroger store manager Villarreal.  The court cannot accept Davis's position when the evidence, consisting of the Turn Around document of transfer and Davis's employee earning report, so compellingly demonstrates the contrary.  There is no indication that

Parman ordered Davis's termination, nor that Parman possessed the fraudulent intent to do so when he authorized Davis's transfer to the De Soto store.

Davis next contends that Kroger committed fraud when district manager Sturm and store manager Villarreal represented to him that the "inaccuracies" in his employment record, flowing from his 2004 termination, would be corrected. Davis asserts that once he was made aware of the loss of his seniority status, he complained to Villarreal. Villarreal then told Davis that he would talk to Sturm about correcting the employment record.[8] Villarreal testified at deposition that Sturm represented that he would look into the matter and take care of it. Def.'s App. 0163, 121:7-17. Villarreal admitted that Sturm never guaranteed that Davis's seniority would be restored and that he just assumed that restoring Davis's seniority is what Sturm meant. *Id.* Similarly, deposition testimony from union representative Sandra Walton indicates that Sturm told her he wanted to fix Davis's hire date to "get it right" because Davis held a management position. Pl.'s App. 56-57, 55:18-56:7. Both of these accounts do not evidence a guarantee of seniority status restoration but rather a promise by Sturm to investigate and resolve the matter.

The deposition testimony of Sturm establishes that investigation of the matter is precisely what then occurred. Sturm testified that he had no access to employee personnel files on the Kroger computer system. Def.'s App. 0173, 130:10-18. He further indicated that he made a call to Kroger's Human Resources department to review all of the documents on file and make a decision, because such decision was ultimately their's to make. *Id.* at 0174, 135:12-19. Assistant human resources manager Taylor then undertook the investigation and concluded that Davis's 2004 termination was justified in light of his prolonged and unexcused leave of absence. *Id.* at 0088-92. The court cannot

---

[8]The evidence does not establish that Davis ever spoke to Sturm directly about correcting his employment record.

conclude that Sturm or Villarreal made a false representation to Davis concerning the loss of his seniority status and curing of his employment record.  No guarantees or promises were made, and the evidentiary record establishes that Davis's concerns were investigated and that a decision was made after proper review of all relevant materials.

Finally, Davis contends that Kroger committed fraud by nondisclosure in 2006 with respect to store manager Longoria allegedly altering Davis's work schedule without his knowledge to work a shift on Saturday, May 20th.  Davis argues that the schedule change was deliberate and underhanded, and that Longoria hoped Davis would not show up to work his shift to justify terminating him.  The evidentiary record establishes that when Davis called the Grand Prairie store that day, he was told that he had a scheduled shift to work that night.  When Davis visited the store in person, he saw that his schedule indeed reflected that he was scheduled to work that night.  The court finds it an unsupportable position that such *disclosures* of Davis's scheduled shift, in advance of his shift's start time, constitute fraud by *nondisclosure*.  Such communication makes legally untenable Davis's contention that Longoria "intended or reasonably expected that Davis would rely on the nondisclosure by not going to work on the evening of May 20, 2006."  Pl.'s Resp. Br. 34.  If this is what Longoria actually intended, it follows that Longoria would not have mentioned Davis's scheduled Saturday shift over the phone when Davis called the store.  It would further have made sense for Longoria to conceal Davis's scheduled Saturday shift from him until *after* Saturday had passed.  Longoria did neither of these things.  Davis knew that he was scheduled to work that night in advance of his shift's start time and simply chose not to work, notwithstanding that he *could* have worked had he wanted.  Def's App. at 0017-18, 76:12-77:22.

**Memorandum Opinion and Order – Page 22**

After having analyzed Davis's fraud and fraud by nondisclosure claims, it is clear to the court that no genuine issue of material fact exists.  Kroger is therefore entitled to judgment as a matter of law with respect to these claims.

###    D.    Negligence Claim

Davis's negligence claim arises out of Kroger's alleged failure to correct his employment record, which reflects his 2004 termination.  Because the court has already determined that this claim is preempted, the court need not address it further.  No genuine issue of material fact exists, and Kroger is entitled to judgment as a matter of law.

###    E.    Defamation Claim

Davis's defamation claim that is not preempted by section 301 of the LMRA arises out of his 2006 termination.  As discussed, Davis must show that: (1) a false statement about the plaintiff was made; (2) the statement was published to a third party without legal excuse; and (3) the plaintiff's reputation was damaged as a result.  *Fiber Sys.*, 470 F.3d at 1161.  Davis asserts that Kroger committed defamation when it told its employees that he was terminated for failure to show up to work a scheduled shift on Saturday, May 20, 2006.  The court determines that Plaintiff's defamation claim fails for three reasons.

First, as to the element of falsity, the evidentiary record reflects that Davis *was* scheduled to work on Saturday, May 20th and had notice in advance of the start of his shift that he was scheduled to work.  Def.'s App. 0155; *Id.* at 0017, 74:11-75:1.  He elected not to work his shift and was fired because of it.  Any ensuing statement by Kroger that Davis was fired because of his failure to work a scheduled shift cannot be considered a false statement; the evidence before the court establishes Davis's failure to work a scheduled shift is precisely what triggered his termination.

Second, as to the element of publication to a third party, Davis alleges that Kroger made such statements to "employees of Kroger."  The court cannot rightfully consider Kroger employees to constitute "third parties."  Because employees are typically agents of their employer, Davis's defamation claim is tantamount to alleging that Kroger committed defamation when Kroger stated to itself why Davis was fired.  The court cannot accept this position.

Finally, as to the element requiring a showing of injury, the court cannot glean from the evidence submitted that Kroger's statement to its employees caused any injury to Davis.  There is no indication in the evidence or in Davis's allegations that the statement was transmitted to anyone other than Kroger employees.  As discussed, the evidence reflects that Davis has worked and continues to work for another employer, Owens Corning.  Nothing in the record evidences that his 2006 termination at Kroger has damaged his job security with Owens Corning.

Accordingly, the court finds that Davis cannot meet the required elements of a defamation claim.  The evidentiary record establishes that there is no genuine issue of material fact, and Kroger is entitled to judgment as a matter of law.

### F.      Request for Declaratory Judgment

Davis requests the court to make a declaration that he was employed by Kroger for a full eighteen years.  "'In a case of actual controversy within its jurisdiction,' the Declaratory Judgment Act allows a federal court to 'declare the rights and other legal relations of any interested party seeking such declaration.'"  *Hosein v. Gonzales*,  452 F.3d 401, 403 (5th Cir. 2006) (quoting 28 U.S.C. § 2201(a)).  The Fifth Circuit interprets the "case of actual controversy" requirement to be coterminous with the "case or controversy" requirement under Article III of the United States Constitution.  *Id.* (citations omitted).  To demonstrate that a case or controversy exists under the

**Memorandum Opinion and Order – Page 24**

standing requirement of Article III, a plaintiff seeking injunctive relief must allege facts from which

it appears there is a substantial likelihood that he will suffer injury in the future.  *Bauer v. Texas*, 341

F.3d 352, 358 (5th Cir. 2003) (citations omitted).  There must be a legal right at issue, and an actual

case or controversy over that legal right.  *See Medimmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127

(2007).

Here, the court is not convinced that Davis has identified a "case of actual controversy" with

respect to his request for a declaration of his total time of employment with Kroger.  The evidentiary

record makes clear that he was employed in some capacity with Kroger throughout most of 1988

to 2006.  Kroger agents freely admit that Davis worked approximately eighteen years for Kroger in

total.  Pl.'s App. 70, 24:9-18.  There is simply no dispute, or case of actual controversy, with respect

to the amount of total time that Davis worked at Kroger.[9]  The only dispute here arises from Davis's

loss of seniority status arising from his 2004 termination.

Davis argues that employment verification services are wrongfully reporting his total time

of employment with Kroger due to his 2004 termination; he has submitted a document by one

service in particular, The Work Number.  This document lists Davis's total time of employment with

Kroger at just shy of two years, from December 26, 2004, to May 21, 2006.  *Id.* at 278.  He contends

that this display is evidence of the tarnishing of his legal right to seek future employment that is

commensurate with his actual credentials.  This document, however, contains a disclaimer stating

---

[9]Davis seeks a declaration that he worked for Kroger a *total* of eighteen years instead of *approximately* eighteen years.  Even if the court included the few months in between his 2004 termination and 2004 rehire date as part of Davis's total employment period, his total employment with Kroger would still only *approximate* eighteen years.  The record establishes that Davis's total time of employment with Kroger was months shy of the technical eighteen-year mark.  Accordingly, there is no case of actual controversy with respect to the declaration that Davis seeks and the declaration that Kroger is willing to provide.

**Memorandum Opinion and Order – Page 25**

"[i]f this person left this employer and was rehired later, the 'Total Time with Employer' amount will likely be understated and will only reflect the most recent consecutive months of service." *Id.* The court does not see why, in light of this disclaimer, such a discrepancy could not be easily explained by Davis if he ever finds himself in the hunt for a new job and a prospective employer questions him about his length of employment with Kroger. Further, Kroger has in no way indicated that it would be unwilling to serve as a reference for Davis in his search for future employment, and Kroger has not indicated that it would be unwilling to state that Davis worked with Kroger for approximately eighteen years.

The court accordingly determines that there is no dispute over a legal right at issue here, nor is there a case of actual controversy that would warrant declaratory relief. Finding that no genuine issue of material fact exists, the court determines that Kroger is entitled to judgment as a matter of law on the declaratory judgment request.

### G.    ERISA Claims

Davis alleges that Kroger has violated an ERISA provision, 29 U.S.C. § 1140. Section 1140 "consists of two components: (1) an anti-retaliation component, which prohibits an employer from retaliating against an employee for exercising ERISA rights; and (2) an anti-interference component, which prohibits an employer from interfering with an employee's future rights to benefits." *Kirby v. SBC Servs., Inc.*, 391 F. Supp. 2d 445, 455 (N.D. Tex. 2004) (Lindsay, J.); *see* 29 U.S.C. § 1140. Davis asserts that Kroger interfered with his employee benefits by altering his employment record. Davis further asserts that Kroger retaliated against him by transferring him to the Grand Prairie store and subsequently terminating him in 2006, shortly after he requested that his employee benefits be reinstated. The court will address both theories separately.

1.      **Interference Under ERISA**

To prevail on an section 1140 claim, Davis must first set forth a *prima facie* case.  *See Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997).  To establish a *prima facie* case under the statute, Plaintiff must prove, or raise a genuine issue of material fact, that Kroger, acting with specific discriminatory intent, fired him in order to interfere with his rights under ERISA or to prevent him from gaining benefits he would otherwise be entitled to under an ERISA plan.  *Id.*; *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 761 (5th Cir. 1996).  Specific discriminatory intent is also an essential element of Davis's retaliation claim.  *Rogers*, 87 F.3d at 761 (citing *Hines v. Massachusetts Mutual Life Ins. Co.*, 43 F.3d 207, 209 (5th Cir. 1995)).  Plaintiff "need not prove that the discriminatory reason was the only reason for discharge but he must show that the loss of benefits was more than an incidental loss from his discharge, and this inference of discrimination can be prove[d] by circumstantial evidence."  *Stafford*, 123 F.3d at 295.  If Davis proves a *prima facie* case, Kroger "must articulate a non-discriminatory reason for its actions, and then the burden shifts to [Plaintiff] to prove this reason is a pretext . . . ."  *Id.*

With respect to Kroger's alleged interference with Davis's employee benefits, Kroger contends that Plaintiff cannot identify any ERISA plan benefit that was affected by his 2004 termination other than possibly his vacation allotment.  Def.'s Br. 49 (citing Def.'s App. 0029, 185:3-8).  The record establishes that when Davis was terminated in 2004, he was a member of the union and his vacation allotment was governed by the CBA, not an ERISA plan.  Def.'s App. 0028, 182:21-24.  Kroger further provides authority standing for the proposition that vacation pay is not governed by an ERISA plan if the benefits are paid out of the general assets of the employer through normal payroll practices; Kroger explains that it pays vacation benefits exactly in such fashion.

Def.'s App. 0090, ¶ 14.  Davis does not rebut any of these arguments or provide contradictory evidence.

The court determines that Davis's contention, with respect to Kroger's alleged interference with his employee benefits, does not properly constitute an ERISA claim.  His vacation allotment is admittedly governed by the CBA, and such benefits are paid out of the general assets of Kroger through its normal payroll practices.  Accordingly, his ERISA claim cannot stand.  Davis cannot establish a *prima facie* case of discriminatory intent to deprive him of his employee benefits.  Analysis of such discriminatory intent applies the familiar *McDonnell* framework.[10]  *See Tisdale v. Woman's Hosp.*, 191 F. App'x 255, 257 (5th Cir. 2006).  Davis has already brought a claim for racial discrimination, and the court applied *McDonnell* to resolve whether discriminatory intent had been shown.  The court determined that evidence of such intent was sorely lacking.  Incorporating that same analysis here, the court determines that Davis cannot establish a *prima facie* case to prevail on this component of his ERISA claim.  Accordingly, the court determines that no genuine issue of material fact exists, and Kroger is entitled to judgment as a matter of law on this claim.

## 2.     Retaliation Under ERISA

With respect to Kroger's alleged retaliation by transferring Davis and later terminating him in 2006 after he requested that his seniority status be reinstated, the court again cannot agree that a *prima facie* case of retaliation under ERISA has been established.  As previously analyzed within the context of Davis's racial discrimination claim, Davis could not show any discriminatory intent on the part of Kroger.  The record reflects that he was transferred to Grand Prairie because he was a junior manager at De Soto and the move was made to accommodate the closing of another Kroger

---

[10]The *McDonnell* framework is the same framework that the court employed, *supra*, in its analysis of Davis's racial discrimination claims under 42 U.S.C. § 1981.

store.  The record further establishes that Davis was terminated in 2006 not because of a scheme to deprive him of his employee benefits, but because he simply refused to work a scheduled shift.

Accordingly, the court determines that no genuine issue of material fact exists with respect to Davis's ERISA claims.  Kroger is therefore entitled to judgment as a matter of law.

**H.**      **Motions to Strike and Motion for Surreply**

The parties filed motions objecting to some of the evidence presented in the appendices accompanying the briefs in support of and in opposition to Defendants' Motion for Summary Judgment.  Plaintiff also requested leave to file a surreply.  The court denied these motions as moot on December 17, 2008, and on September 30, 2009; the court stated that it would not consider any inadmissible evidence or arguments.   In hereby ruling on Defendants' Motion for Summary Judgment, the court has not considered any such evidence or arguments.

**IV.**   <u>**Conclusion**</u>

For the reasons stated herein, the court determines that no genuine issue of material fact exists with respect to any of the claims asserted by Plaintiff.  All of Plaintiff's claims find their genesis in two events: Davis's unexcused leave of absence in 2004 and his refusal to work on May 20, 2006.  Plaintiff's troubles were not caused by any wrongful conduct on the part of Kroger; his troubles were caused by a course of conduct that he voluntarily chose to pursue regarding those two incidents.  The court therefore **grants** Defendants' Motion for Summary Judgment.  All of Plaintiff's claims are **dismissed with prejudice**.  In accordance with Rule 58 of the Federal Rules of Civil Procedure, judgment will issue by separate document.

**It is so ordered** this 31st day of March, 2010.

Sam A. Lindsay
United States District Judge